In the matter of a petition for a commission for SARAH A. RHODES, an alleged lunatic.

[Decided October 19th, 1923.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

"Application is made for leave to traverse the inquisition in the above matter in which the jury found Mrs. Sarah A. Rhodes to be of unsound mind, so as to be unable to take care of herself and her property, and in connection with this motion it is urged that an issue may be awarded to try the fact of lunacy and have the inquisition set aside on the ground that the proceedings were irregular and unsatisfactory for the reason that the finding is against the weight of evidence, and on the ground that a mistake was made by the jury as to their duty and for such other relief as the court may deem proper, including a request for the refusal on the part of the court to appoint another commission at any time in the future.

"From the record it appears that the inquisition of lunacy was duly issued on the petition of Anna McCoy and Lucetta Iliff, cousins of the alleged incompetent, and also verified by their affidavits as well as the affidavit of William F. Utter, who had been acting as the agent for Mrs. Rhodes in the rental of her property and the management of some of her affairs.

"At the time the application for the inquisition was made, in April, 1922, Mrs. Rhodes was a widow over seventy-two years of age, and she was suffering from palsy and from an injury to her spine and was quite lame, and these conditions affected her health generally. Her husband had died in 1886, and their only child, a son, had died in 1919. Mrs. Rhodes was at this time possessed of certain real estate and personal property, the net value of which is about $19,000, and the average net income therefrom is estimated to be less than

$1,000, and she is living at an expense of about $200 monthly.

"The inquisition was issued on April 27th, 1922, and the hearing thereof was continued by orders of the court, made on the consent of counsel, until November 1st, 1922, when the commission was duly executed at Newark, before a jury, by whose verdict Mrs. Rhodes was adjudged to be 'a lunatic and of unsound mind, and does, at times, enjoy lucid intervals so that she is not capable of the management of herself, her lands, tenements, goods and chattels, and that she has been in the same state of lunacy since March 1st, 1922.' It appears that before the hearing on the inquisition was held, viz., on June 7th, 1922, Mrs. Rhodes conveyed her real estate to the Fidelity Union Trust Company of Newark, in trust, and that on July 1st, 1922, a declaration of trust which was irrevocable was made by Mrs. Rhodes, declaring the conditions of trust upon which the property was to be held and managed by the trust company.

"The first objection made against the validity of the proceedings is the claim that no opportunity was given to counsel to challenge the jurymen. I find nothing in the record to support this claim. As a matter of fact the record shows that a challenge to the jury was made by Mr. Laddey and was overruled. He now claims, although there is no proof to support it, that two members of the jury were employed in the sheriff's office, and by reason thereof were disqualified to sit as jurors, and he cites chapter 128 (*P. L. 1921 p. 50*) to support his contention. A reading of the provisions of that chapter clearly indicates that it applies by its terms only to grant and petit jurors and does not apply to a jury summoned in a proceeding such as this.

"The second objection urged in support of the motion is that the orders of continuance of the hearing on the inquisition were improperly entered after the two months' limitation prescribed by rule No. 236 for the execution of the inquisition had expired, and were therefore invalid, and terminated the proceedings. The record does not disclose any objection made by Mr. Laddey to the proceedings on this ground nor does he deny the statement contained in the brief of counsel

for the petitioners that he consented to the making of such orders of continuance, and, furthermore, assuming that his contention that the time had expired for the execution of the commission when one or more of the orders of continuance were entered, his contention is still without support because under rule No. 2 of this court it is provided—

" 'That the time limited in these rules for doing any. act may, for good cause, be extended by order either before or after the expiration of the time.' The provisions of this rule No. 2 apply to rule No. 236, relied upon by Mr. Laddey, as they do to all other rules of this court. And rule No. 236 itself provides that after the expiration of the two months' period no proceedings shall take place under the commission without the further order of the court, and the record shows that such further orders were from time to time made by the chancellor.

"It is further claimed that the master committed grave errors in his charge to the jury. Reading the charge in full as it appears in the record, I am unable to perceive the errors which it is claimed were committed. The facts were properly presented and the law applicable thereto was clearly stated for the guidance of the jury, and if any such errors were committed it appears that no exception was taken to any of these that are now alleged to be prejudicial to the rights of Mrs. Rhodes.

"The further claim is made that there were certain mistakes made by the jury and that the verdict returned is the result thereof. In support of this claim the court is asked to consider certain affidavits made by three of the jurors after the rendition of the verdict and which in effect charged that two of the jurors, viz., those alleged to be employes in the sheriff's office dominated their fellow-jurors and coerced them into reaching the conclusion announced in the verdict. Aside from the fact that these affidavits are not admissible for the purposes for which they are now offered, see *Queen* v. *Jennings, 93 N. J. Law 353; Hutchinson* v. *Consumers Coal Co., 36 N. J. Law 24; Linauer* v. *Teeter, 41 N. J. Law 255.* I do not find from Mr. Laddey's recital of their contents

that they would show that it was the intention of the jurors to announce any different verdict from that which they returned.

"The supporting affidavits attached to the petition on which the commission issued are also attacked on the ground that they are inadequate and insufficient to warrant the issuance of the commission. That matter was passed upon at the time the chancellor granted the commission, and it is now too late to make this objection, assuming it to have any merit, as the court undoubtedly was satisfied in granting the commission, that a *prima facie* case had been made out by the petitioners or the commission would not have been granted.

"On the remaining and important feature of the case, viz., the sufficiency of the evidence to support the verdict, I find the proof to conclusively support the jury's verdict. Not only does the testimony of the medical and lay witnesses show Mrs. Rhodes to be of unsound mind, but her own examination before the commissioners and the jurors clearly indicates her loss of memory, her unsoundness of mind and her inability to care for herself or her property. The testimony of Doctor Beling and Doctor Washington is given in a very careful, guarded manner, and they were apparently reluctant to pronounce Mrs. Rhodes a lunatic and to place that stigma upon her; they preferred to use a milder expression wherever possible, but when pressed by counsel for Mrs. Rhodes on cross-examination they were finally obliged to pronounce her a lunatic, although not a dangerous one, and to unqualifiedly state that she, by reason of her mental condition, was incapable of caring for herself and her property. In this they were corroborated not only by the petitioners but by other witnesses acquainted with Mrs. Rhodes, and who had ample opportunity to observe her condition, her loss of memory and her inability to care for her person, either in cleanliness or with proper and adequate food, or to care for her property or financial interests. The proof further indicates that this mental condition of Mrs. Rhodes has been progressive for some time, and that it is probably the result of the death of

her son in 1919, who had cared for her and shown her the greatest affection and looked after all her personal and material interests. The proof showing the condition of dirt and vermin and rats in the home, and vermin and dirt upon the person of Mrs. Rhodes, which was in sharp contrast to the former clean, neat and orderly condition in which she kept her person and her home, coupled with her inability to recall the extent or nature of her properties or their value or the nature of trust which she created therein when she conveyed the same to the trust company, her inability to tell Doctor Washington whether she had conveyed the property in trust to the Clinton Avenue Trust Company or the Fidelity Trust Company, when, in fact, at the time he saw her in either March or May she had not made any conveyance to any trust company, her inability to recall what she was now paying to Mr. and Mrs. Warren for her board or what arrangements had been made respecting the same, her inability to tell what had become of her personal property and her failure to give any intelligent information about herself or her affairs, furnished conclusive proof that while she is not wholly incompetent, and can recall events of the remote past and can express herself in an intelligent and orderly manner on certain subjects, that she has such a total loss of memory at times that she is unable to recall the most vital features of her affairs in so far as they affect herself, her comfort or her future.

"There is some evidence from Mr. and Mrs. Warren, with whom Mrs. Rhodes is now living, to negative the idea of incompetency, as well as from some other witnesses, but this mere negative proof is so unsatisfactory that it does not, in any way, overcome the positive testimony of the witnesses produced in support of the petition for the inquisition, and which, as stated, conclusively supports the verdict of the jury that Mrs. Rhodes is of unsound mind and is incapable of caring for herself or her property, and as I find nothing in the record to support any of the contentions advanced in support of the motion to traverse, &c., I will advise that the application be denied."

*Mr. John V. Laddey,* for the appellant.

*Mr. George E. Carpenter,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—10.

*For reversal*—None.